### UNITED STATES v. NORTHERN PAC. R. CO. et al.

(Circuit Court, D. Minnesota, Third Division. February 21, 1903.)

#### No. 589.

1. TELEGRAPHS—SUBSIDIZED RAILROADS—CONTRACT WITH TELEGRAPH COMPANY—VALIDITY—STATUTES—INFRINGEMENT.

Act Aug. 7, 1888 [U. S. Comp. St. 1901, p. 3583], requires all subsidized railroad companies to construct and maintain telegraph lines for governmental, commercial, and other purposes, and exercise by itself all telegraph franchises conferred on them; and section 2 [U. S. Comp. St. 1901, p. 3583] requires all such railroad companies to so operate their respective telegraph lines as to afford equal facilities to all, without discrimination in favor of or against any person, company, or corporation whatsoever, and to receive and exchange business with connecting lines without discrimination. *Held*, that a contract between the Northern Pacific Railroad Company and the Western Union Telegraph Company by which the telegraph company agreed to construct telegraph lines along the railroad's right of way, and grant to the railroad company the exclusive use of one of two wires erected, and the right to stretch additional wires, for which the railroad company agreed to pay one-third the cost of constructing the line, and to transport the property and employés of the telegraph company in constructing and maintaining the line free of charge, was not in violation of such sections.

2. SAME—CONNECTING TELEGRAPH LINES—DESIGNATION—ADDITIONAL CHARGES—IMPOSTS.

The fact that the railroad company, in receiving telegraph messages for points beyond its lines, required the sender to designate the connecting telegraph company over whose line the message should be sent, and made a small additional charge for the words necessary to designate such line, which charge was in accordance with the uniform practice in like cases among telegraph companies, was not an arbitrary impost or discrimination prohibited by section 2 [U. S. Comp. St. 1901, p. 3583].

In Equity.

Philander C. Knox, U. S. Atty. Gen., and Charles C. Houpt, U. S. Dist. Atty.

C. W. Bunn, for defendant railway companies.

Rush Taggart, for defendant telegraph company.

AMIDON, District Judge. In a general way, this suit presents the same question as arose in United States v. Union Pacific Ry. Co., 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319. It is prosecuted to compel the Northern Pacific Railway Company to maintain and carry on, by its own officers and agents, for commercial and public purposes, a line of telegraph coextensive with its line of road. The government contends that the present suit is controlled by the decision of the Supreme Court in the case referred to. But an examination of the contract between the Northern Pacific Railroad Company and the Western Union Telegraph Company now complained of, and the contract between the Union Pacific Railway Company and the same telegraph company involved in the earlier case, presents many points of marked and controlling difference.

The distinctive features of the contract in the Union Pacific Case were (1) that the railway company should not give permission to any other telegraph company to construct or operate any telegraph line upon the lines or roadway of the railway company without the consent in writing of the telegraph company; (2) that the railway company should not, without the consent of the telegraph company, transmit commercial or paid business from any station where the latter had an office, and that the railway company should account for and pay over to the telegraph company, at the tariff rates established by the latter, all sums received by the railway company for messages sent from points where the telegraph company had no separate office. It was held by the Supreme Court that these provisions of the contract had two results forbidden by law: (1) They amounted to a transfer by the Union Pacific Railway Company to the Western Union Company of the former's franchise to carry on a telegraph business, and disqualified it wholly from doing such business for public or commercial purposes; (2) they forbade the Union Pacific Railway Company to permit any other telegraph company to construct or maintain a telegraph line upon its right of way. It was held that the former result violated the act of Congress of August 7, 1888 [U. S. Comp. St. 1901, p. 3583]; and the latter, the act of Congress of July 24, 1866.

It should be borne in mind, in considering the present case, that it is brought to compel the Northern Pacific Railroad Company to comply with the provision of the act of August 7, 1888 [U. S. Comp. St. 1901, pp. 3579–3581]. It is difficult to see what bearing the other statute has. That act, in effect, in connection with earlier statutes, made the right of way of every railroad a post road, and provided that any telegraph company, on complying with the provisions of the act, should be entitled to construct and operate a line of telegraph upon all post roads. The right thus created is for the benefit of the telegraph company. It is doubtful whether the government has such a pecuniary

interest in the subject that it could maintain a suit on its own behalf to compel the railroad company to admit a telegraph company to the exercise of the privileges created by this statute, and to cancel a contract which impeded the exercise of that right. It would be even more doubtful whether the government could maintain a suit to cancel such a contract, when, as in this case, there was no averment that any telegraph company had, upon application, been denied the use of the right of way of the railroad company for the purposes mentioned in the statute. It would seem that such a suit could be maintained only by the telegraph company whose rights were obstructed. Whether these suggestions are correct or not, the primary object of the present suit is not to admit another telegraph company to construct and maintain a line upon the right of way of the defendant company, but to compel that company itself to construct and maintain such a line of telegraph upon its own right of way.

The Supreme Court stated the question presented by the Union Pacific Case to be whether the contract there under consideration, if performed, would prevent the railroad company from complying with the act of August 7, 1888; and, the provisions of the contract being in direct contravention of the duties created by the statute, the contract was condemned. The same question that was presented in that suit is now presented with reference to the contract between the Northern Pacific Railway Company and the Western Union Telegraph Company: Would its provisions, if enforced, prevent the Northern Pacific Railway Company from complying with the statute?

An examination of the contract discloses that neither of the provisions which were condemned in the Union Pacific Case is embraced in the present contract. It does not forbid the railway company to admit another telegraph company to its right of way, nor does it forbid the railway company to do a public and commercial telegraph business over its own lines. The contract does contain a provision whereby the railroad company is required to transport the property and employés of the Western Union Company engaged in the construction and maintenance of the telegraph line, free of charge, and a further provision which forbids the granting of like privileges to other telegraph companies. Are these provisions illegal? To answer that question, we must look at the whole contract. It provides, in substance, that the Western Union Telegraph Company should construct a line of telegraph, consisting of at least 30 poles to the mile, and two galvanized wires, along the right of way of the railway company. When completed, the railroad company is granted the right to the exclusive use of one of the two wires, and the further right to stretch upon the poles such additional wires as, in its judgment, are necessary for its business. For this the railroad company is bound by the contract to pay to the telegraph company only one-third of the actual cost of constructing the line. It is manifest, therefore, that its agreement to transport the property and employés of the Western Union Telegraph Company while engaged in constructing the line constituted a part of the consideration granted by the railroad company for the services and property which it secured as a result of the performance of the contract by the telegraph company. I find nothing in any act of

Congress which forbids the railroad company, in constructing its telegraph line, to employ any agency which it might find advantageous for that purpose; nor can I see anything illegal in its paying, by transportation of freight and persons, for the benefits which it secured by the contract. Its contract for free transportation is not a mere gratuity, but is given for value received. If it were to grant to another telegraph company such transportation free, that would be a mere gratuity; and, when it undertakes not to do this, it certainly violates no law. I am therefore unable to find anything in the contract between the railroad company and the Western Union Company which in any way obstructs the former in the performance of the duties imposed upon it by the act of August 7, 1888 [U. S. Comp. St. 1901, p. 3583]. It is also worthy of mention that the contract here sought to be annulled is no longer in force, having been terminated on the 31st day of January, 1899.

The effect of this contract, however, is not a mere matter of inference. It has been interpreted by the conduct of the parties. When the act of 1888 was passed, the railroad company at once attempted to conform to its requirements, having at the time under its exclusive control three wires extending over its entire line. It issued a circular to all its telegraph operators, requiring them to accept and transmit all public and commercial messages offered to them for transmission over its lines as far as the same extended, and over the lines of connecting companies to points beyond its own lines. This order recites that it is issued for the express purpose of complying with the act of August 7, 1888 [U. S. Comp. St. 1901, p. 3583], and the evidence in this case leaves no doubt that in issuing it the railroad company was prompted by entire good faith. It was then, and has at all times since been, willing and able to transmit over the lines under its exclusive control all public and commercial telegraph messages. Where such messages were destined for points beyond its own lines, the sender was required to designate the connecting telegraph company over whose lines the message should be sent, and a small additional charge was made for the words necessary to designate such connecting line. Such a charge, however, the evidence shows, is in accordance with the uniform practice in like cases among telegraph companies. The situation would seem to render it necessary. It was not an arbitrary impost levied upon those who sought to use the telegraph lines of the railroad company, but was simply an additional charge for an additional service. The evidence shows that few public and commercial messages have been tendered to the company since the promulgation of this order. That, however, is not the fault of the railroad company. All it could do was to comply with the statute. If the public refused to use the facilities which it furnished, for the reason that the accommodations were not equal to those of a national system of telegraph like the Western Union, and for the further reason that the public had by long experience become accustomed to the use of the Western Union service, this would constitute no violation of the law by the railroad company, but would rather show the folly of the law itself.

I find, therefore, from the evidence in this case:

1. That at all times since the passage of the act of August 7, 1888 [U. S. Comp. St. 1901, p. 3583], the defendant railroad company has, by and through its own respective corporate officers and employés, maintained and operated, for railroad, governmental, commercial, and all other purposes, a line of telegraph coextensive with its railroad system.

2. I find that, if the contracts between the Northern Pacific Railroad Company and the Western Union Telegraph Company, referred to in the bill, were fully performed, the same contain no provision which will obstruct the railroad company in the performance of its duties under the act of August 7, 1888 [U. S. Comp. St. 1901, p. 3583].

For these reasons, a decree will be entered dismissing the bill upon the merits.